IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA HREDOCIK,          )
                                       )
        Plaintiff,           )
                                       )
   -vs-                 )        Civil Action No. 16-1227
                                       )
NANCY A. BERRYHILL,[1]      )
ACTING COMMISSIONER OF SOCIAL   )
SECURITY,               )
                                       )
       Defendant.        )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Melissa Hredocik ("Hredocik") brings this action seeking judicial review of the ALJ's decision denying a claim for supplemental security income ("SSI"). Hredocik filed an application in June of 2013 alleging a disability as of the date of her birth due to autism. (R. 57)[2] She appeared and testified at a hearing on October 15, 2014, as did a vocational expert. (R. 24-55). Ultimately, the ALJ denied the claim, finding Hredocik capable of performing a full range of work at all exertional levels subject to some nonexertional limitations. (R. 15-20) Hredocik appealed. Pending are Cross Motions for Summary Judgment. See ECF docket nos. 13 and 15. After careful consideration, the decision rendered by the ALJ is affirmed.

### Legal Analysis

---

[1] Nancy A. Berryhill because acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.
[2] During the hearing, counsel for Hredocik clarified that Hredocik's other impairments were, in essence, symptoms of autism and that "the autism spectrum disorder would be the severe impairment here." (R. 28) Consequently, I limit my review to Hredocik's allegations concerning autism.

1.  Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

2.  Step 3 – Listing 12.10

As stated above, at Step 3 of the sequential analysis, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. If so, the claimant is disabled. If not, the analysis continues. Here, the ALJ found that the "severity of the claimant's autism does not meet or medically equal the criteria of listing 12.10." (R. 14) Listing 12.10 establishes, in relevant part, the following criteria that a claimant must meet in order to qualify as disabled:

A. Medically documented findings of the following:
  1. For autistic disorder, all of the following:
    a. Qualitative deficits in reciprocal social interaction; and
    b. Qualitative deficits in verbal and non-verbal communication and in imaginative activity; and
    c. Markedly restricted repertoire of activities and interests;
...
AND

B. Resulting in at least two of the following:
  1. Marked restrictions of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence or pace; or
  4. Repeated episodes of decompensation each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, the ALJ focused solely on the "paragraph B" criteria and found the evidence wanting. Specifically, he concluded that, with respect to activities of daily living, Hredocik was independent in her personal care, was able to prepare simple meals, could clean, and could shop. (R. 15) Consequently, he found her to have only mild restrictions. As to her social functioning, he found her to have only moderate difficulties. The ALJ explained that Hredocik reported that "she is not very good around people," and that the RFC restricts her to only occasional interaction with others. (R. 15) As to concentration, persistence or pace, the ALJ found Hredocik to have moderate

difficulties. (R. 15) The ALJ further stated that "[w]hile this impairment reasonably may be expected to limit her in these areas, it would not prevent her from performing work in a static, low stress environment with infrequent changes and those changes that did occur, would be explained and / or demonstrated and could be learned in 30 days or less. The work must not be fast paced or have strict production time or time quotas, as specified in the [RFC] as adopted here…." (R.15) Finally, with respect to episodes of decompensation, the ALJ noted that there is no record of any episodes of decompensation or hospitalizations related to autism. (R. 15) Because Hredocik did not present with at least two "marked" limitations, the ALJ concluded that she did not satisfy Listing 12.10.

Hredocik objects to the ALJ's findings regarding social functioning and concentration, persistence and pace. She contends that the ALJ's decision is not supported by substantial evidence of record. After careful review, I disagree and find that the ALJ's decision is supported by substantial evidence of record. With respect to social functioning, as the ALJ stated, Hredocik was married for approximately 12 years. (R. 16) At the time of the hearing she had a long term boyfriend. (R. 18, 204) She babysits for her young niece. (R. 192, 209) Further, the only medical evidence on record as to social functioning is a Medical Source Statement submitted by Dr. Lindsay Groves.  Contrary to Hredocik's assertions, Dr. Groves did not find Hredocik to socially withdraw or suffer from severe anxiety or to be emotionally unstable. Rather, the Medical Source Statement actually states the following:

> 7. To determine your patient's ability to do work related activities on a day to day basis in a regular work setting, please give use your opinion, based on your examination, of how your patient's mental / emotional capabilities are affected by the impairments. Consider the medical history, the chronicity of findings and the

expected duration of any work related limitations, but not the individual's age, sex, or work experience.
Claimant reports she withdraws and cannot tolerate social settings – feels this causes severe anxiety and says she becomes emotionally unstable.

(R. 222) Thus, Dr. Groves merely recounts what Hredocik herself reports. Consequently, I find that the ALJ's conclusion regarding social functioning is supported by substantial evidence of record.

With respect to Hredocik's ability to maintain concentration, persistence, or pace, the record contains substantial evidence supporting the ALJ's decision that Hredocik suffers only moderate difficulties. For instance, Dr. Groves characterized as "good" Hredocik's mental abilities and aptitude to: remember work-like procedures; to understand, remember, and carry out very short and simple instructions; to sustain an ordinary routine without special supervision; and to ask simple questions or request assistance. (R. 223-24) She characterized as "fair" Hredocik's mental abilities and aptitude to "maintain attention for two hour segment; maintain regular attendance and be punctual with customary, usually [sic] tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; and perform at a consistent pace without an unreasonable number and length or rest periods." (R. 222) Additionally, Hredocik herself reports spending time playing computer games and helping with such tasks as shopping, cleaning and preparing simple meals. (R. 182, 187) Further, Dr. McDade reported that Hredocik's neurological examination was "relatively unremarkable although there is some evidence of mild cognitive difficulties with test of executive function, as well as calculations." (R. 187) She also noted that "[h]er cognitive testing demonstrates some difficulties with calculations,

working memory, with intact language function, as well as short-term memory." (R. 182) Consequently, the ALJ's decision that Hredocik suffers only moderate difficulties in concentration, persistence, or pace is supported by substantial evidence of record.

   3.  Treating Physicians Doctrine

   Hredocik also takes issue with the weight the ALJ gave to the opinion proffered by Dr. Groves, a psychologist.[3] Specifically, Hredocik contends that the ALJ evaluated Dr. Groves' statements set forth in the Medical Source Statement (R. 220-225) only insofar as they pertained to the condition of depression, not as they related to autism. The Medical Source Statement posited the following question:

> Q: Is it reasonable that an individual with your patient's condition would experience difficulty working eight (8) hours per day for a forty (40) hour week job?
> A: Yes

(R. 225) Hredocik insists that the Dr. Groves based her response to this question on the limitation of autism rather than depression.

   I reject Hredocik's argument. There is no support in the record for Hredocik's belief that Dr. Groves' pronouncement of an inability to work a 40 hour per week job was based upon autism. To the extent that they were, such a pronouncement would be inconsistent with Dr. Groves' treatment records. Indeed, the record indicates that Hredocik was treated throughout her time at Kreinbrook Psychological Services for depression and was administered medication for depression. (R. 199-219, 226-230) The Progress Notes make no mention of autism or treatment for the same. (R. 199-219, 226-230) Additionally, the intake form indicates that Hredocik was first referred to

---

[3] Hredocik makes a passing reference to the opinion rendered by Dr. McDade, a neurologist. Yet Hredocik offers no substantive analysis regarding the ALJ's error with respect to his treatment of Dr. McDade's opinion. See ECF docket no. 14, p. 14-15. As such, I will focus only on Hredocik's contentions with respect to Dr. Groves.

Kreinbrook by her attorney, and that the diagnosis was major depressive disorder, recurrent, moderate; anxiety disorder not otherwise specified. (R. 207) There is a reference to epilepsy and financial and interpersonal psychosocial stressors, but no mention of autism. (R. 207) There is simply no suggestion in the evidence from Kreinbrook Psychological Services that Dr. Groves' treatment of Hredocik focused upon anything but her depression and anxiety. Certainly Hredocik has not identified any such records. As such, I find that the ALJ's treatment of Dr. Groves' Medical Source Statement was entirely appropriate and supported by substantial evidence of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA HREDOCIK,                        )
                                         )
              Plaintiff,                 )
                                         )
       -vs-                              )          Civil Action No. 16-1227
                                         )
NANCY A. BERRYHILL,[4]                   )
ACTING COMMISSIONER OF                   )
SOCIAL SECURITY,                         )
                                         )
          Defendant.                     )

AMBROSE, Senior District Judge.

### ORDER OF COURT

Therefore, this 7th day of July, 2017, it is hereby ORDERED that Plaintiff's Motion

for Summary Judgment (Docket no. 13) is denied and Defendant's Motion for Summary

Judgment (Docket no. 15) is granted.  It is further ORDERED that the decision of the

ALJ is AFFIRMED.

                                   BY THE COURT:

                                   /s/ Donetta W. Ambrose
                                   Donetta W. Ambrose
                                   United States Senior District Judge

---

[4] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017.